**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ABDULRHMAN ABDULRASOL
AL GHAWALB,

    *Plaintiff*,

v.                                      CASE NO. 11-CV-13972

COMMISSIONER OF                 DISTRICT JUDGE ARTHUR J. TARNOW
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for a period of disability, for disability insurance benefits ("DIB"), and for supplemental security income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 9.)

Plaintiff was 42 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 27.) Plaintiff's employment history includes work at an automobile oil-change business and as a taxi driver. (Tr. at 111.) Plaintiff filed the instant claims on May 19, 2007, alleging that he became unable to work on March 27, 2009. (Tr. at 78, 82.) The claims were denied at the initial administrative stages. (Tr. at 48, 49.) In denying Plaintiff's claims, the Commissioner considered asthma and affective disorders as possible bases for disability. (*Id.*) On June 14, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Jerome B. Blum, who considered the application for benefits *de novo*. (Tr. at 9-20.) In a decision dated October 7, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 20.) Plaintiff requested a review of this decision on October 27, 2010. (Tr. at 7-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 24, 2011, when, after the review of additional exhibits[2] (Tr. at 5, 275-83), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On September 12, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

 **C.** **Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

6

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2014, and that Plaintiff had not engaged in substantial gainful activity since March 27, 2009, the alleged onset date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's degenerative joint disease (knees), right wrist tendonitis, and asthma/allergies were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 18.) The ALJ also found that on the alleged disability onset date, Plaintiff was a younger individual – age 18 to 44. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 16-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 20.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff participated in psychiatric treatment since October 2007. (Tr. at 158-159.) Plaintiff was treated by Al-Saraf Raad, M.D., from February 2007 through May 2009. (Tr. at 165-89.) Plaintiff was also treated by Itemad Badr, M.D., from January 2008 through June 2009 for asthma. (Tr. at 190-226.)

On March 20, 2009, Plaintiff was evaluated by Theethaye Ittiara, M.D., who diagnosed anxiety disorder and assessed a GAF score of 60. (Tr. at 158.) Dr. Ittiara also noted that Plaintiff had "no adverse effects from the medicine[,]" that he "spoke relevantly," and that his "[i]nsight and judgment [were] good." (*Id.*) Dr. Ittiara also stated that Plaintiff's "overall coping and functioning [was] adequate." (*Id.*)

7

On May 12, 2009, Plaintiff underwent a neurological examination by Jose U. De Sousa, M.D., because of numbness in his hands. (Tr. at 166-67.) Dr. De Sousa concluded that the study was "[a]bnormal, indicative of R side Carpal tunnel syndrome, mild." (Tr. at 167.)

Plaintiff underwent a consultative examination by Cynthia Shelby Lane, M.D., on July 22, 2009. (Tr. at 227-35.) Dr. Lane opined that "based on today's exam, the examinee would have difficulty with prolonged standing, stooping and squatting, as well as walking" and that he "does need ongoing mental healthcare and should avoid toxins, fumes, smoke and dust." (Tr. at 230.) Dr. Lane also indicated that Plaintiff had the ability to stand, sit, push, pull, pick up coins, write, and that his reflexes were all normal. (Tr. at 233.) Dr. Lane noted that there was no clinical evidence supporting the need for a walking aid and his hand/arm strength was assessed at 5 out of 5. (Tr. at 234.)

A Psychiatric Review Technique was completed on July 26, 2009. (Tr. at 236-49.) It was concluded that the psychological impairment of anxiety-related disorders was "not severe." (Tr. at 236.) It was also concluded that Plaintiff was mildly restricted in his activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. at 246.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed on July 28, 2009. (Tr. at 250-57.) The assessment concluded that Plaintiff was able to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in his ability to push or pull. (Tr. at 251.) Plaintiff could only occasionally climb, balance, stoop, etc., but should never climb ladders, ropes or scaffolds. (Tr. at 252.) There were no manipulative, visual, or communicative limitations established. (Tr. at 253-54.) As to environmental limitations, it was determined that Plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, and hazards, and should

8

avoid even moderate exposure to humidity and fumes, odors, dust, gases, poor ventilation, etc. (Tr. at 254.) The assessment noted that Plaintiff's statements were "not totally consistent with all of the information in file and reported adls [activities of daily living]." (Tr. at 255.)

In June 2009, Jiab Suleiman, D.O., diagnosed Plaintiff with bilateral arthritis in his knees. (Tr. at 266.) In October 2009, Plaintiff underwent a right knee arthroscopy performed by Dr. Suleiman. (Tr. at 258.) After surgery, Plaintiff's range of motion in the knee was "good" and physical therapy was recommended. (Tr. at 263.)

On January 8, 2010, an MRI of Plaintiff's thoracic spine showed a "small central disc herniation, T3-T4." (Tr. at 261.)

On March 22, 2010, Dr. Suleiman noted that Plaintiff started having wrist pain "about 8 days ago after he lifted a couch[.]" (Tr. at 262.) Although Plaintiff stated that his wrist was "tender," both wrists nonetheless showed a good range of motion. (*Id.*)

In his daily activity report, Plaintiff stated that he has no problem with personal care, that he does basic cleaning, organizing, and changing light bulbs, spends time outside, drives a car, shops in stores twice a week, handles finances, sits in the yard, watches television, and spends time with family. (Tr. at 130-33.)

At the administrative hearing, Plaintiff was represented by counsel and when the ALJ asked counsel if there were any "preliminaries," counsel did not mention Plaintiff's abilities or inabilities to speak English. (Tr. at 26.) Plaintiff was sworn in and proceeded to testify without an interpreter and without marked difficulty. Plaintiff testified that he emigrated here from Iraq in September 1994. (Tr. at 34.) When asked whether he reads English, Plaintiff responded, "I read English, sir." (Tr. at 34.)

After the VE testified for the ALJ, Plaintiff's counsel asked the VE, "you heard the claimant testify today and you heard him speak. Would his speech be a detriment, a bar to him getting these jobs?" (Tr. at 44.) The VE responded, "I do not believe they would. I think he's, I don't know where he learned his English, he must have learned it in school over in Iraq, but he's very good. I commend him." (*Id.*) The VE further stated, "he's obviously communicated well enough to deal with customers and do oil changes and drove a taxi and worked in the past . . . and he's communicated quite well to the questions you posed." (Tr. at 44.) When further asked whether the pronunciation problems evidenced in the record that day would "affect his ability to perform the telephone marketing jobs," the VE responded that "it depends on what the job and the products are. Obviously, I wouldn't have him selling medical equipment or high tech kinds of stuff." (Tr. at 45.) The VE further clarified that in "telemarketing he's not going to be dealing with high tech equipment." (*Id.*)

Plaintiff testified that he lives in a rented, one-story home with his wife and five children. (Tr. at 27.) Plaintiff indicated that his wife takes care of the home, including the laundry, cooking, yardwork, and snow removal. When Plaintiff was asked why he does not do any of these things, Plaintiff responded that his hands, feet, and back are a problem. (Tr. at 27-28.) Plaintiff indicated that he was given a brace to wear on his right hand by Dr. Suleiman. (Tr. at 28.) Plaintiff further testified that he had surgery on his right knee one year ago and was scheduled to have his left knee done in August 2010. (Tr. at 28, 37.) Plaintiff further testified that he has been treated by his psychiatrist since 2007. (*Id.*) Plaintiff stated that he has problems with depression and his "nerves," and that he likes it quiet and does not like working in noisy places with people talking too much. (Tr. at 29.) Plaintiff indicated that he is on medication for depression, asthma, allergies, and arthritis. (Tr. at 29-30, 39.)

Plaintiff stated that in the summer, he stays in his garage because of "too much pollen" in the air and because he "do[es]n't like the sound of [his] baby crying[.]" (Tr. at 30.) Plaintiff testified that he stopped working because he can't work and that this timing just happened to coincide with the business going out of business. (*Id.*) Plaintiff stated that he can't sit, stand, or walk longer than 15 minutes or his "feet start to get heavy and numbness" or he "feel[s] tired and pain in my both knee." (Tr. at 31.) Plaintiff also stated that he has numbness in his hands and fingers. (Tr. at 33.) Plaintiff stated that he left work at the automobile oil-change business because the "smell of oil and the smoke from cars and the gas smell" affected his asthma. (Tr. at 32.) Plaintiff stated that he has a driver's license, but does not drive because of pain "when I try to steer the wheel[.]" (Tr. at 33.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background in a "sit or stand job in an office building" and the VE testified that there are unskilled entry level jobs such as information clerk, surveillance monitor, telemarketer, and telephone answering operator that are "all pristine clean office environments." (Tr. at 42.) The ALJ added that such person "speaks, certainly adequately, English to communicate as evidenced here." (Tr. at 42-43.) The VE testified that such jobs require a sixth grade reading level, i.e., a person that is "able to read signs, names of offices, the majority of a newspaper, obviously if it gets into some opinion op ed pages where they're using fairly complex words, maybe not." (Tr. at 43.) The VE indicated that such a level is akin to being able to understand only simple instructions. (*Id.*) The VE further testified that there were about 8,500 such jobs in Detroit, and about 15,000 in the state. (*Id.*) The VE also stated that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 43-44.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of sedentary work. (Tr. at 16-18.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833;

*Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that "the ALJ's finding that plaintiff's psychiatric condition was not a severe impairment and did not cause more than minimal limitation upon his ability to work is not supported by substantial evidence." (Doc. 8 at 9-12.) Plaintiff further argues that the ALJ "failed to adequately consider plaintiff's problems with the English language in assessing his RFC, as demonstrated by the jobs he ultimately found plaintiff could perform[,]" "including information clerk, telemarketer, and telephone answering operator." (Doc. 8 at 12-13.)

### a. Severe Impairments

With regard to Plaintiff's contention about his psychiatric condition, in the Sixth Circuit, "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The test is used to "screen out totally groundless claims." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

In the instant case, the ALJ found that Plaintiff's degenerative joint disease in his knees, right wrist tendonitis, and asthma/allergies were "severe" within the meaning of the second sequential step. (Tr. at 14.) Plaintiff contends that the ALJ improperly omitted Plaintiff's psychiatric condition from the list of severe impairments. (Doc. 8 at 9-12 .) However, Plaintiff fails to recognize that once Step Two is "cleared" by a finding that some severe impairment exists, then the ALJ must consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 Fed. App'x at 457. "The fact that some of [a plaintiff's]

impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* Consequently, any alleged omission from the list of severe impairments does not undermine the ALJ's decision.

### b. Problems with the English language

Regarding inability to communicate in English, the regulations provide:

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

20 C.F.R. § 416.964(b). Thus, the "question of whether a claimant can communicate in English is consequential only as it relates to whether a claimant's imperfect English skills would preclude him or her from performing a job they could otherwise perform." *Castro v. Astrue*, No. 3:09-CV-1700, 2011 WL 1252584, at *12 (N.D. Tex. Apr. 1, 2011).

There is no indication in Plaintiff's application or medical records that Plaintiff has any difficulty communicating in English. In addition, as noted at the hearing, Plaintiff's language skills did not prevent him from working at an oil-change business or as a taxi driver since 2005. (Tr. at 111.) In addition, Plaintiff did not ask for or exhibit the need for a translator at the administrative hearing. At the hearing, Plaintiff stated that he reads English (Tr. at 34) and the VE indicated that, based on his observations throughout the hearing, his English would not be a detriment to him performing any of the jobs the VE suggested Plaintiff could otherwise perform. (Tr. at 44.) The VE added that "he's obviously communicated well enough to deal with customers and do oil changes and drove a taxi and worked in the past . . . and he's communicated quite well" during the hearing. (*Id.*) The VE also noted that any potential difficulties would not affect the Plaintiff's

14

ability to perform the telemarketer jobs because those would not include selling high tech or specialized products. (Tr. at 45.) Furthermore, even if the telemarketer jobs were not of the type that Plaintiff could perform, the VE also testified as to information clerk and surveillance monitor jobs that Plaintiff could perform that were available in the relevant market. (Tr. at 42.)

I therefore suggest that the ALJ's conclusion that Plaintiff could communicate sufficiently in English to perform the jobs proffered by the VE is supported by substantial evidence. *See Castro*, 2011 WL 1252584, at *12 (transcript that contained "several examples of Plaintiff's imperfect English skills" in addition to "her undisputed inability to read or write English, need not outweigh the fact that her testimony in English was otherwise meaningful"; thus, "[s]ubstantial evidence supports the ALJ's decision that Plaintiff can adequately communicate in English."); *Carbonell v. Astrue*, No. 08-CV-661 (GLS/VEB), 2010 WL 1507013, at *7 (N.D.N.Y. Mar. 31, 2010) (substantial evidence supported ALJ finding that the plaintiff could communicate in English such that occupational base was not eroded where the plaintiff testified at the hearing without the benefit of an interpreter and "could speak and understand English provided the ALJ speak slowly").

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that he has no problem with personal care, that he does basic cleaning, organizing, and changing light bulbs, spends time outside, drives a car, shops in stores twice a week, handles finances, sits in the yard, watches television, and spends time with family. (Tr. at 130-33.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/ Charles E Binder
                                            CHARLES E. BINDER
Dated: May 1, 2012                           United States Magistrate Judge

**CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: May 1, 2012                    By     s/Patricia T. Morris
                                                          Law Clerk to Magistrate Judge Binder