UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDULRHMAN ABDULRASOL
AL GHAWALB,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

Case No.  11-CV-13972

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE CHARLES E. BINDER

**ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [11] AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [9] AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [8] AND REMANDING TO ADMINISTRATIVE LAW JUDGE FOR FURTHER ANALYSIS**

Now before the court is the Magistrate Judge's Report and Recommendation ("R&R") [11], entered May 1, 2012, recommending that Plaintiff's Motion for Summary Judgment [8] be denied and Defendant's Motion for Summary Judgment [9] be granted. On May 15, 2012, Plaintiff filed an Objection [12] to the R&R. Defendant filed a Response [13] to the objection on May 25, 2012.

**I. Procedural Background**

Plaintiff filed for disability insurance benefits ("DIB") and for supplemental security income benefits ("SSI") on May 19, 2009. (Transcript, Doc. 5 at 78.) The claims were denied. (Tr. at 50.) Plaintiff appealed and on June 14, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Jerome B. Blum. (Tr. at 12.) Lawrence S. Zatkin, a vocational expert, testified at the hearing along with the Plaintiff. (*Id.*) On October 7, 2010, the ALJ concluded that the Plaintiff was not disabled. (Tr. at 20.) The Appeals Council denied review of the ALJ's decision, rendering the ALJ's determination the final decision of the Commissioner. (Tr. at 1.)

On September 12, 2011, Plaintiff filed a complaint in this court for judicial review of the decision. Plaintiff and Defendant filed cross-motions for summary judgment. On May 1, 2012, the Magistrate Judge issued a R&R denying Plaintiff's Motion for Summary Judgment [8], granting Defendant's Motion for Summary Judgment [9], and affirming the Commissioner's findings. Plaintiff filed an Objection [12] to the R&R on May 15, 2012. Defendant filed a Response [13] on May 25, 2012.

## II. Factual Background

In September 1994, Plaintiff emigrated from Iraq. (Tr. at 34.) Plaintiff resides in Detroit with his wife and five children. (Tr. at 27.) Plaintiff worked as a taxi cab driver, a warehouse worker, and at an oil change business. (Tr. at 111.) Plaintiff last had substantial gainful employment in October 2008. (*Id.*) On May 19, 2009, Plaintiff filed the instant claims, alleging that his disability began on March 27, 2009. (Tr. at 78.)

Plaintiff began seeking psychiatric treatment from Theethaye Ittiara, M.D., in October of 2007. (Tr. at 28, 158-63.) Plaintiff stated that Dr. Ittiara is treating him for "depression and my nerves. I have depression so much." (Tr. at 29.) Dr. Ittiara evaluated Plaintiff on March 20, 2009, diagnosing Plaintiff with an anxiety disorder, assessing a Global Assessment of Functioning ("GAF") score of 60,[1] and moderate psychosocial and environmental problems. (Tr. at 158).[2] Dr.

---

[1] Mental health physicians use a GAF score to rate social, occupational and psychological functioning of adults. *Diagnostic and Statistical Manual of Mental Disorders*, 34 (American Psychiatric Association ed., 4th ed. 2000). A GAF score of 60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. *Id.*

[2] A rating of moderate for psychosocial and environmental problems indicates the existence of an outside influence on a patient's mental disorder. Examples include educational problems, occupational problems or problems related to the social environment of the patient. *Id.* at 31. While not required, it is helpful if the physician lists what the negative influences are on the patient. Here, Dr. Ittiara did not list what led him to give a rating of moderate. (Tr. at 158.)

2

Ittiara noted that Plaintiff "spoke relevantly" and that his "insight and judgment [is] good." (Tr. at 158). Dr. Ittiara also noted that Plaintiff has been exhibiting "more stress" but that "overall coping and functioning is adequate." (*Id.*)

Plaintiff has also been treated by Al-Saraf Raad, M.D., a primary-care physician. (Tr. at 165-189.) Plaintiff was treated for asthma by Itemad Badr, M.D., from January 2008 through June 2009. (Tr. at 190-226.) Jose U. De Sousa, M.D., performed a neurological examination of Plaintiff on May 12, 2009 for numbness in Plaintiff's hands. (Tr. at 166-67.) Dr. De Sousa concluded that Plaintiff's hands were "abnormal, indicative of R side Carpal tunnel syndrome, mild." (Tr. at 167.)

On June 26, 2009, Plaintiff was diagnosed by Jiab Suleiman, D.O., with arthritis in both knees and had arthoscopic surgery done on his right knee by Ramsey Hammoud, D.O., in October 2009. (Tr. at 258-66.) After surgery, Dr. Suleiman reported that Plaintiff's knee showed some stiffness but overall a good range of motion. (Tr. at 263.)

On July 22, 2009, Cynthia Shelby Lane, M.D., conducted a consultative examination on the Plaintiff. (Tr. at 227-235.) Dr. Lane's impression of the Plaintiff was such that "the examinee has a history of chronic depression . . . asthma . . . anxiety disorder . . . chronic leg and knee pain with chrondromalacia . . . chronic back pain . . . [and] parethesias of the upper right extremity." (Tr. at 230.) Dr. Lane advised that the parethesias required further examination and that the Plaintiff would have "difficulty with prolonged standing, stooping and squatting, as well as walking." (*Id.*) Dr. Lane believed Plaintiff "need[s] ongoing mental health care and should avoid toxins, fumes, smoke and dust." (*Id.*) The examination also concluded that Plaintiff could perform tasks such as sitting, pushing, picking up coins, dialing a telephone, climbing stairs squatting, and that Plaintiff had sufficient reflexes. (Tr. at 233.) Dr. Lane found that there was no clinical evidence that supported need of a walking aid. (Tr. 234.)

Wayne Hill, M.D., conducted a psychiatric review technique of Plaintiff on July 26, 2009. (Tr. at 236-49.) Dr. Hill believed a Residual Functional Capacity ("RFC") assessment was necessary, but that Plaintiff's anxiety-related disorders were "not severe." (Tr. at 236.) In looking at Plaintiff's anxiety under "paragraph A" criteria, Dr. Hill concluded that Plaintiff suffered from "a medically determinable impairment . . . that does not satisfy the diagnostic criteria."[3] (Tr. at 241.) Dr. Hill, in assessing the "paragraph B" criteria of Plaintiff, listed his daily living limitation as mild, his social limitation as mild, his concentration limitation as mild and his decompensation limitation as none.[4] (Tr. at 246.) In his notes, Dr. Hill stressed that Plaintiff was receiving treatment for anxiety and depression but has "shown improvement." (Tr. at 248.) Dr. Hill also noted that Plaintiff had an anxiety disorder and a GAF score of 60. (*Id.*)

A Physical RFC Assessment was completed on July 28, 2009. (Tr. at 250-57.) The assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for a total of 2 hours a day, sit for 6 hours a day and has unlimited push/pull capabilities. (Tr at 251.) The information supported "an RFC for a narrow range of light work." (Tr. at 257.) There is no information in the record concerning whether a Mental RFC Assessment was completed on Plaintiff.

In January 2010, Tony Bennett, M.D., conducted an MRI on Plaintiff's back, concluding that Plaintiff had a "small central disc herniation, T3-T4." (Tr. at 261.) Plaintiff was diagnosed with tendinitis in his right wrist in March 2010. (Tr. at 262.)

---

[3] For anxiety-related disorders, the severity of the disorder is measured using criteria from three paragraphs, A, B, and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If claimant meets requirements in A and B or A and C, claimant is found to have a listed impairment under appendix 1 to subpart P of part 404. *Id.*; *See infra* p. 8.

[4] For paragraph B criteria to be satisfied, two of the four limitations must reach "Marked limitation." *Id.* It does not appear that paragraph C criteria was met. (Tr. at 247.)

### III. Assessing Disability

Disability is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A) (2012); 20 C.F.R. § 404.1505 (2012).

To assess disability, regulations provide the ALJ with a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.980 (2012). "If we find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step." 20 C.F.R. § 416.920(a)(4).

At the first step, the ALJ assesses whether the claimant is engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" activity is activity that requires significant mental or physical activities. 20 C.F.R. § 416.972(a). "Gainful" activity is activity that one does for pay or profit. 20 C.F.R. § 416.972(b). If the ALJ finds that the claimant is performing SGA, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

At the second step, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521 (2012). If the claimant does not have a severe impairment, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At the third step, the ALJ assesses whether the severe impairment "meets or equals one of our listings in appendix 1 to subpart P of part 404." 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the severe impairment does meet one of the listings, then the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ then proceeds to step four to determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). "Your [RFC] is the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1) (2012). In considering the RFC, the ALJ "will consider *all* of your medically determinable impairments . . . including you medically determinable impairments that are *not* severe." 20 C.F.R. § 416.945(a)(2) (emphasis added). The ALJ will also "consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations." 20 C.F.R. § 416.945(a)(3).

The ALJ must use the RFC assessment to determine if the claimant can perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If claimant can still do past relevant work, then benefits are denied. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If claimant cannot do past relevant work, at the fifth step the ALJ must use the RFC assessment along with the claimant's age, education, and work experience to see if the claimant can make a transition to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). To evaluate education, the ALJ must assess categories such as illiteracy, marginal education, limited education, high school education and inability to communicate in English. *See Id.* If it is shown that claimant cannot transition to other work, then the claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Once the inquiry reaches step five, the burden shifts to the Commissioner "to identify a significant number of jobs in

6

the economy that accommodate the claimant's [RFC] (determined at step four) and vocational profile." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

### IV. ALJ's Decision

At the June 14, 2010 hearing, the Plaintiff was asked by his attorney and the ALJ about his ability to work. (Tr. at 24-47.) Plaintiff described his particular physical ailments and his visits with his psychiatrist, citing his reasons for his visits a result of having "depression so much." (Tr. at 29.)[5] Plaintiff testified that he dislikes noise and interaction with other people. (*Id.*) Plaintiff confirmed that he takes medication for his depression. (*Id.*) When asked why he is unable to work, Plaintiff testified that it is "because my knee, my feet and the depression." (Tr. at 31.) The ALJ and the Plaintiff discussed the variety of medication Plaintiff took for his physical and psychological pain. (Tr. at 34-41.) The ALJ asked the Plaintiff if it would be possible for the Plaintiff to have a position:

> where [he] didn't have to work around any type of smelly oils or chemicals . . . in [an] office building . . . where you were somebody like . . . [an] information clerk . . . [in a] non smoking building, it has air conditioning and summer heat in the winter. Could you do that eight hours a day, five days a week?

(Tr. at 38.)

Plaintiff replied that he didn't think he could because of his pain. (*Id.*) The ALJ also asked the Plaintiff whether he read English. Plaintiff responded "I read English, sir." (Tr. at 34.)

The ALJ asked the Vocational Expert ("VE") whether jobs such as the one posited to the Plaintiff existed in the region, to which the VE responded that "there are jobs that are classified as unskilled entry level in office environments such as information clerks, surveillance monitor, telemarketer, [and] telephone answering operator." (Tr. at 42.) When asked how many of these jobs are available in the region, the VE answered "about 8,500." (Tr. at 43.) The Plaintiff's attorney

---

[5]In the transcript, Dr. Ittiara's name is incorrectly spelled "Dr. Achira." (Tr. at 28.)

asked the VE if Plaintiff's English would be a bar to getting these jobs, VE responded that he didn't believe so, noting that his English is "very good." (Tr. at 44.) The VE cautioned that the jobs "wouldn't have [the Plaintiff] selling medical equipment or high tech kinds of stuff." (Tr. at 45.)

Upon examining the evidence, the ALJ concluded that the Plaintiff is not disabled within the meaning of the Social Security Act. (Tr. at 12.) In applying the five-step disability inquiry, the ALJ found that Plaintiff was not engaged in significant gainful activity. (Tr. at 14.) At step two, ALJ found the Plaintiff's degenerative joint disease in his knees, asthma and right wrist tendinitis were severe. (Tr. at 14-15). The ALJ also found Plaintiff's back pain, psychological symptoms of depression and anxiety and obesity to be non-severe. (Tr. at 15.) At step three, the ALJ concluded that no combination of Plaintiff's impairments equaled one of the listed impairments triggering a conclusion of disability. (Tr. at 16.) At step four, the ALJ assessed the Plaintiff's RFC, concluding that Plaintiff could perform sedentary work with no concentrated exposures to extreme heat, cold, wetness, humidity or pulmonary irritants. (Tr. at 16-18.) Plaintiff also could only work at unskilled employment due to his educational and cultural background with somewhat diminished abilities to communicate. (Tr. at 18.) The ALJ then concluded that Plaintiff could not perform any past previous work. (*Id.*) At step five, the ALJ, relying on the VE's testimony, concluded that there are significant amount of positions Plaintiff could perform that exist in the national economy. (Tr. at 18-19). As a result, the ALJ found that Plaintiff was not disabled. (Tr. at 20.)

### V. Standard of Review

This Court reviews objections to a Magistrate Judge's R&R on dispositive issues, such as the ones presented here, *de novo*. *See* 28 U.S.C. § 636(b)(1)(C) (2012). Making certain objections, but failing to raise others, will not preserve all objections a party may have to the R&R. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006). Objections to the

8

Magistrate Judge's R&R must be specific. *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006).

In reviewing an ALJ's decisions, 42 U.S.C. § 405(g) (2012) provides that the ALJ's "factual findings are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)) (internal quotation marks omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In order to determine "whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). So long as the conclusion is supported by substantial evidence, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

In assessing the factual findings, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 409 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *see also Vance v. Comm'r of Soc. Sec.*, 260 F. App'x. 801, 807 (6th Cir. 2008). "However, [the Court] may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision." *Ramsey v. Comm'r of Soc. Sec.*, No. 10-1695, 2011 WL 5966812, at *2 (N.D. Ohio 2011); *see also Walker v. Sec'y of Health & Human Serv.*, 884 F.2d 241, 245 (6th Cir. 1989).

9

"Although an ALJ's credibility findings are to be accorded significant deference," *Miller v. Astrue*, No. 08-122, 2009 WL 3161456, at 5 (E.D. Ky. Sept. 29, 2009), an ALJ must clearly state the reasons for rejecting evidence. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

## VI. Analysis

On appeal Plaintiff has three objections to the Magistrate Judge's R&R. Plaintiff objects 1) to the finding that the designation of Plaintiff's psychiatric condition as non-severe did not poison the remaining analysis, 2) to Plaintiff's treating psychiatrist's testimony not being given controlling weight, and 3) to the ALJ's failure to take into account Plaintiff's difficulties with the English language.

### A. Whether the Non-Severe Designation Poisoned the rest of ALJ's Analysis

Whether severe or not, the ALJ's designation of Plaintiff's psychiatric condition as non-severe is harmless error so long at least one other ailment is considered severe. *See Maziarz*, 837 F.2d at 244 (concluding that an ALJ's determination of severe or non-severe is harmless so long as at least one ailment is considered to be severe such that the five-step inquiry may continue); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Here, the ALJ found Plaintiff's degenerative joint disease (knees), right wrist tendonitis and asthma/allergies severe. (Tr. at 14.) However, Plaintiff further alleges that the designation of Plaintiff's psychiatric evaluation as non-severe led to its exclusion in the remainder of the ALJ's analysis. (Pl's Obj. at 1-3). Defendant counters that there is no indication that the ALJ failed to include the evaluation in his analysis. (Def.'s Resp. at 1.)

The question is therefore, "whether the ALJ considered the *entire* medical record including any claimed impairments in determining the plaintiff's RFC." *Miller*, 2009 WL 3161456, at *2 n.1 (emphasis added); *see also Jamison v. Comm'r of Soc. Sec.*, 12008 WL 2795740, at *9 (S.D. Ohio

July 18, 2008) (finding that it is not harmless error when ALJ failed to consider an impairment in determining claimant's RFC.)

It is true that "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). However, the ALJ's decision still must show that the ALJ implicitly resolved conflicts in the record. *See Id.*

The ALJ concluded that the Plaintiff could perform sedentary work with no concentrated exposure to extremes of cold, heat, wetness, humidity or pulmonary irritants (Tr. at 16-18). In reaching this conclusion, the ALJ stated that he "considered all symptoms and . . . opinion evidence." (Tr. at 17). However, an examination of the RFC assessment indicates that the ALJ only considered the Plaintiff's lifting capabilities, knee pain, back pain, hand pain, and lung capabilities in determining the Plaintiff's RFC (Tr. at 17-18). The ALJ does reference the psychiatrist's report, but only in referring to Plaintiff's asthma. (Tr. at 18). The ALJ appears to skip over the discussion of the state's psychiatric evaluation and does not reference Dr. Ittiara's psychiatric evaluations. (Tr. at 16-18).

It does not appear that the ALJ implicitly or explicitly resolved the conflicting psychiatric evidence in the record. The ALJ had reports about Plaintiff's psychiatric condition from Dr. Ittiara, Dr. Hill and the Plaintiff's testimony, yet the ALJ does not cite any of this evidence in his RFC assessment. The ALJ does refer to Dr. Ittiara and Dr. Hill's reports in step-two of his analysis, and incorporates particular portions of the reports in his conclusion that Plaintiff's psychiatric condition is non-severe. (Tr. at 15.) But he does not reference either of the reports in his RFC assessment. If the Court is to infer that the ALJ used these portions in his RFC assessment, the ALJ must explain why he chose to not credit the evidence. *See Ramsey*, 2011 WL 5966812, at *5 (holding that if the

11

ALJ believed that a medical opinion was unsupported by the record or did not warrant credit, then the ALJ should have stated so in his opinion); *see also Howard v Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (finding that an ALJ's selective inclusion of portions of the report that cast claimant in a capable light suggests that he only considered part of the report and failed to consider all of the report). Without an explanation for the exclusion of Plaintiff's psychiatric evaluation in the RFC assessment, this court cannot make a finding there is "more than a scintilla" of substantial evidence to support the ALJ's RFC assessment. *Rogers*, 486 F.3d at 241.

Additionally, a significant portion of the Plaintiff's evidence relating to his psychological condition is the Plaintiff's own testimony, testimony the ALJ concluded was not credible due to the testimony being inconsistent. (Tr. at 17.) An "ALJ is not required to accept a claimant's subjective complaints." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). However, the ALJ must specifically set forth his or her explanation for discounting the testimony. *See Id.* (finding the ALJ's decision to discount the claimant's subjective complaints when the ALJ explicitly listed the inconsistencies to be valid). Here, the ALJ does not explain why he determined that Plaintiff's testimony was not credible. Without that explanation, the court cannot find the RFC assessment to be supported by substantial evidence. Therefore, Plaintiff's objection is well-taken.

### B. Dr. Ittiara's Medical Opinion

Plaintiff contends that the ALJ failed to give controlling weight to Dr. Ittiara, Plaintiff's treating psychiatrist. (Pl's Obj. at 3.) The Defendants' counter that Dr. Ittiara did not issue a medical opinion on the Plaintiff and that the ALJ did include portions of Dr. Ittiara's response. (Def.'s Resp. at 2.)

"Typically, the medical opinions of treating physicians . . . are given controlling weight." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646 (6th Cir. 2011); *see also Rogers*, 486 F.3d at 242.

When examining medical opinions, factors the ALJ considers in assessing medical opinion evidence include length of treatment, nature of the treatment, supportability, consistency, specialization and other factors. 20 C.F.R. § 404.1527(c). The ALJ must "give good reasons" for the weight of a physician's opinion on his determination. *Id.* If the ALJ concludes that the treating physician's opinion should not be given controlling weight, the ALJ "must explain in the decision" the weight accorded to the physicians. *Id.*; *see Rogers*, 486 F.3d at 242 (holding that the ALJ must provide sufficiently specific reasons for discounting treating physicians' opinions). A failure "to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* at 243.

The ALJ does not have to explicitly mention every treating physician so long as the ALJ examines the treating physician's medical opinion. *See Monateri v. Comm'r of Soc. Sec.*, 436 F'Appx. 434, 444 (6th Cir. 2011) (holding a failure to specifically mention a doctor by name does not constitute a lack of substantial evidence because that doctor's medical records and opinions were explicitly incorporated into the medical opinion of another doctor and were considered by the ALJ); *see also Scott v. Comm'r of Soc. Sec.*, 2012 WL 995265, at *11 (E.D. Mich. Mar. 5, 2012) (holding fatal a failure to consider medical opinion when opinion was not explicitly incorporated in another's opinion and no evidence the exhibits were considered in the ALJ's analysis).

Examining the record, Dr. Ittiara is a treating physician according to 20 C.F.R. § 404.1527. Dr. Ittiara, a specialist in psychiatry, examined the Plaintiff on more than one occasion over the course of several years. (Tr. at 158-63.) Thus, it would appear that Dr. Ittiara's diagnosis should be given controlling weight and that the ALJ must provide good reasons for not incorporating Dr. Ittiara's diagnosis of an anxiety disorder, the GAF score of 60, and the moderate rating on his

13

psychosocial and environmental problems. (Tr. at 158); *see supra* p. 2-3; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (stating that the Commissioner must follow regulations that require he give a good reason for not crediting a treating physician). The ALJ does not provide any reason for failing to credit Dr. Ittiara. Instead, the ALJ cites portions of Dr. Ittiara's evaluation and follows Dr. Hill's analysis that Plaintiff's impairments were not severe. (Tr. at 15.)

As noted above, the failure to give a good reason is not fatal if Dr. Ittiara's medical diagnosis is explicitly incorporated into Dr. Hill's analysis and the ALJ considered Dr. Ittiara's medical diagnosis. However, the ALJ does not consider Dr. Ittiara's medicial diagnosis, only citing portions of the evaluation but failing to discuss other portions of the diagnosis. As such, the ALJ must provide a "good reason" why it chose not to credit Dr. Ittiara's diagnosis of anxiety disorder. 20 C.F.R. § 404.1527(c)(2). Thus, Plaintiff's objection is well-taken.

### C. Plaintiff's Difficulties with the English Language

Plaintiff alleges that the ALJ and the Magistrate Judge failed to take into account the difficulties Plaintiff has with the English language, particularly in the VE's answer to the ALJ's hypothetical question. (Pl's Obj. at 3-4.) Defendant counters that in respect to the Plaintiff's difficulties with the English Language there is substantial evidence that the hypothetical question and the VE's answer is satisfactory. (Def.'s Resp. at 2.)

A court only looks to whether there is substantial evidence to support the ALJ's findings, not substantial evidence to come to another conclusion. *Longworth*, 402 F.3d at 595. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky*, 35 F.3d at 1027 (citing *Mullen*, 800 F.2d at 545).

"In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). Additionally, so long as a VE testifies to the limitations, the limitations do not need to be in the original hypothetical question. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (1987).

Here, the ALJ concluded that Plaintiff is "able to communicate in English," albeit with some difficulties. (Tr. at 18-19.) The ability to communicate in English is an education factor used in the fifth step of disability analysis. 20 C.F.R. §416.964(b)(5) (2012). Along with the conclusion that Plaintiff could communicate in English, the ALJ assessed the Plaintiff's education level at limited education. (Tr. at 19.) Limited education is generally considered at a level between 7th and 11th grade. 20 C.F.R. §416.964(b)(3).

While there is evidence that the Plaintiff's English skills are less than to be desired, there is substantial evidence that Plaintiff's English skills are sufficient to establish the ALJ's conclusions. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (upholding denial of benefits when VE heard claimant's language difficulties and still recommended positions); *See also Carbonell v. Astrue*, 2010 WL 1507013, at *6 (N.D.N.Y. Mar. 31, 2010) (finding claimant's ability to speak at his hearing without an interpreter provided substantial evidence of English proficiency); *Castro v. Astrue*, 2011 WL 1252584, at *12 (N.D. Tex. Apr. 1, 2011) (holding Plaintiff's imperfect spoken English compounded with inability to read or write to still have substantial evidence of sufficient English skills). Here, the Plaintiff testified that he can read English. (Tr. at 34.) Plaintiff testified without the presence of an interpreter at the hearing. (Tr. at 26.) There is substantial evidence for the ALJ to conclude that Plaintiff can communicate in English.

In the hypothetical question to the VE, the VE was asked to detail jobs that satisfied this education level and the VE responded that there were 8,500 regional jobs that would meet a 6th grade reading level. (Tr. at 43.) *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (finding 1,350 regional jobs to meet 42 U.S.C. §423(d)(2)(A) (2012) requirements for significant number of jobs in the region). The VE was asked about Plaintiff's communication skills, particularly the Plaintiff's English skills, and responded that he found them to be satisfactory for the jobs listed. (Tr. at 44.) Therefore, there is substantial evidence that the VE's response included the Plaintiff's limitations as they were articulated to him. Thus, there is substantial evidence to support both the ALJ's finding and the VE's response that Plaintiff can communicate in English.

## VII. Conclusion

The Court having reviewed the record in this case, the Report and Recommendation of the Magistrate Judge is hereby **ADOPTED IN PART** with respect to the finding that there was substantial evidence to support the ALJ's determination on Plaintiff's English language skills. Plaintiff's Motion for Summary Judgment is **GRANTED IN PART**. Defendant's Motion for Summary Judgment is **GRANTED IN PART**. Plaintiff's claim is remanded to the ALJ for incorporation of the Plaintiff's psychiatric condition in the RFC. The ALJ is also to either explain why he chose not to give controlling weight to Plaintiff's treating psychiatrist or to include Plaintiff's treating psychiatrist's diagnosis in his determination.

**SO ORDERED**.

s/Arthur J. Tarnow<br>
ARTHUR J. TARNOW<br>
Senior United States District Judge

Dated: July 10, 2012

**CERTIFICATE OF SERVICE**

      I hereby certify on July 10, 2012 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 10, 2012: **None.**

                                    s/Michael E. Lang
                                    Deputy Clerk to
                                    District Judge Arthur J. Tarnow
                                    (313) 234-5182